## G. F. SPARKS v. THE STATE.

Indictment charged defendant with the theft of four beef steers from the possession of one C., proceeding with the following jargon,—"without his consent, intent to deprive him, the owner, of the value of the same, and to appropriate the to the use himself, the said George Sparks." *Held*, a nonsensical accumulation of words ; and this court expresses surprise that a trial and conviction should have been permitted upon such an indictment.

APPEAL from Hill. Tried below before the Hon. F. P. Wood.

The facts are apparent.

*Coke, Herring & Anderson,* for the appellant.—The indictment is for theft, and we submit should charge the offense as the offense is defined by the code. (Paschal's Dig., p. 462, Art. 2381.) "Theft is the fraudulent taking of corporeal personal property, belonging to another, from his possession, or from the possession of some person holding the same for him, without his consent, with intent to deprive the owner of the value of the same, and to appropriate it to the use or benefit of the person taking."

This is the general definition of theft, and we submit that all indictments charging specific acts of theft, must charge every requsite included in the general definition.

It will be observed that this indictment does not comply with this rule, and is obnoxious to it in the following particulars :

1. In charging with reference to intent, the indictment uses this : "from the possession of the owner without his consent, intent to deprive him, the owner, of the value of the same and appropriate it to the use himself," etc.

With intent to deprive, etc., is the language of the definition above cited. The use of the adjective as here, instead of the noun with the preposition with prefixed, does not fill the object of the charge, because it cannot be said that intent qualifies the noun Sparks, or the noun owner. It may be inferred, and only by inference can it be said to apply to one more than the other.

2. Then it is not charged that the act was committed to appropriate the said beef steers to defendant's use. "Appropriate the "— and no word following to show

the what, and leaving this only to inference —"to the use himself," not of himself.    Leaving the word of, or some other word, to be supplied by inference or intentment.

These omissions occur in the original indictment, and are not omissions by the clerk.    We send and submit with the record a copy, made out so nearly as could be by transcript by the clerk, an exact copy of the indictment ; so certified by him.

Now, while it has been decided by this court that so much strictness is not required in indictments as at common law, we submit in all earnestness that to supply all the omissions in this indictment by intendment, would be tantamount to destroying all rule in regard to indictments, and especially obnoxious to the provision of the code "that the offense must be charged in plain and intelligible words."    (Paschal, page 509, Art. 2863.)

Where so many material words are wanting in the very gravamen of the indictment, can it be said that the charge or offense is set forth in plain and intelligible words?    And when these words are supplied by intendment, it cannot be said that they are set forth.

We now submit that the writing, scrawl or scribble, relied on in this cause, is not an indictment.    That an indictment is a perfect whole ; that when we speak of an indictment, either under the code or common law, we mean a writing which itself on its face sets out the offense in plain and intelligible words, leaving nothing to inference.

Mr. Justice Roberts, in Hewitt v. The State, 25 Texas, pages 725, 726 and 727, we submit very forcibly and truly sets out the true doctrine in reference to the question at bar.    He quotes from the bill of rights, "No citizen of this State shall be deprived of life, liberty,

property or privileges, outlawed, exiled, etc., except by due course of law;" and the further provision, "No person shall be holden to answer for any criminal charge, but on indictment;" and then, after quoting the definition of an indictment by the code, as the written (not inferred) statements of a grand jury, he adds, "For when an act is made the subject of a criminal charge, the constitutional provision requiring an indictment or information is at once brought into active force in favor of those who are accused of, and prosecuted for, said act ; and if an indictment be preferred, it must be such an one as the framers of the Constitution contemplated. Such an indictment then becomes one of the steps in the prosecution, 'in due course of the law of the land.' "

We submit that in accord with the above quotation, that an indictment is required by the Constitution, and that an indictment must be what the framers of the Constitution understood by the term or word, a written statement, that sets out the offense in plain and intelligible words, but not a statement such as the one before us, partly written and the remainder left for inference.

In the case of The State v. Hutchinson (which involved merely a charge of misdemeanor), the indictment charged that the defendant  *  *  *  "unlawfully, feloniously take up and kill a certain beef steer on the tenth day of March, 1860,"— since the passage of the code. Wheeler, C. J., says that the omission of the word was an objection well taken.

"The omission of so important a word cannot be supplied by intendment." (26 Texas Reports, 111, 112.)

In the cause, State v. Huston, 12 Texas, 245—a cause involving an indictment charging the petty offense of gaming—the little word "at" was omitted before the words "a certain public house ;" and it was held that

this word, which could be so clearly inferred, could not be supplied by intendment.

In State v. Williams, 14 Texas, page 126, Justice Lipscomb, in speaking of the technical rules of construing indictments, says: "The humanity and good sense of these rules strongly recommend them to the favorable consideration of every jurist. * * * And although they may sometimes have been construed as merely technical and too much calculated to favor the escape of the guilty, yet they have continued to receive the sanction of the most enlightened jurists in our own country, and the recent tendency has been to enforce this rule more stringently, rather than to tolerate a re laxation."

And quoting in same decision, from Chief Justice Gibson: "Precision in the description of the offense is of the last importance to the innocent, for it is that which marks the limits of the accusation and fixes the proof of it."

Now, applying these rules to the indictment, this party, if the indictment be held good, will be held convicted of theft upon an indictment which does not charge that he appropriated the property taken to his own use— one of the legal ingredients of theft. The whole principle of the decision quoted, we think, even under the principles of the code, makes the indictment clearly void. And were the party never so guilty, would it not be better that he should escape, than that these rules, sanctioned so long by the wisdom of jurisprudence, should be abrogated?

*William Alexander, Attorney General,* for the State.

OGDEN, J.—The indictment in this case is for the theft of four beef steers, from the the possession of one

23—XXXV

---

J. P. Cox, "without his consent, intent to deprive him, the owner, of the value of the same, and to appropriate the to the use himself, the said George Sparks." This unmeaning accumulation of words was probably the result of clerical errors in the drafting of the original indictment; but we are surprised that a district judge should permit a trial and conviction in his court, upon an indictment so faulty and full of nonsense. The judgment is reversed and the cause is dismissed.

REVERSED AND DISMISSED.